UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| IKEISHA PERRY, | C/A No.  4:11-cv-434-DCN-TER |
| Petitioner, | |
| vs. | **Report and Recommendation** |
| CATHERINE KENDALL FOR LEATH CORRECTIONAL, | |
| Respondent. | |

Petitioner, Ikeisha Perry (Petitioner/Perry"), is currently incarcerated at Leath Correctional Institution. Petitioner appearing *pro se*, filed her petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on February 28, 2011. Respondent filed a motion for summary judgment on August 5, 2011, along with a return, supporting memorandum and exhibits. The undersigned issued an order filed August 8, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #29). Petitioner filed a response on August 24, 2011. On August 30, 2011, Respondent filed a motion to supplement the return with an affidavit regarding mailing of the petition from the correctional facility. (Doc. #35). This motion was granted as unopposed. On September 12, 2011, Petitioner filed a sur reply. (Doc. #36).

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I. PROCEDURAL HISTORY

The procedural history as set forth by the Respondent in her memorandum has not been disputed by the Petitioner in her response. Therefore, the undersigned will set out the undisputed procedural history as set forth by the Respondent, in part.

Petitioner is presently confined in the Leath Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of her Richland County conviction and sentence. The Richland County Grand Jury indicted Petitioner at the December 2000 term of court for homicide by child abuse. The victim was Petitioner's nine-month old son. Petitioner's former live-in boyfriend was also indicted for homicide by child abuse and the two were jointly tried in a jury trial held February 13, -15, 2002, before the Honorable Henry F. Floyd, then state circuit judge. Michael McMullen, Esq., and Tommy A. Thomas, Esq., represented Petitioner on the charges. The jury convicted Petitioner and co-defendant as charged. (PCR App. p. 880). The judge sentenced each to life imprisonment. (PCR App. pp. 888-889). Petitioner filed an appeal.

Joseph L. Savitz, III, Acting Chief Attorney of the South Carolina Office of Appellate Defense, represented Petitioner on appeal. On February 3, 2004, appellate counsel filed a Final Brief of Appellant in the South Carolina Court of Appeals and raised the following issue:

> The judge erred by allowing the state to introduce evidence appellant had failed to show remorse for her child's death, both before and after her arrest.

(PCR App. p. 1065).

The State filed its final brief in response on February 2, 2004. (PCR App. pp. 1071-1084). On June 21, 2004, the South Carolina Court of Appeals affirmed the conviction (PCR App. pp. 1087-1090). Petitioner filed neither a petition for rehearing nor a petition for writ of certiorari review to seek review by the state supreme court. The Court of Appeals issued the remittitur on July 8,

2004. (PCR App. p. 1091).

On December 13, 2004, Petitioner filed an application for post-conviction relief ("PCR"), in which he raised the following claims:

    (a) Ineffective Assistance of Counsel;

    (b) Not Guilty based on lack of evidence;

    (c) Judge erred in refusing defendant Benefit of lesser charge.

(PCR App. p. 1093).

The State made a return to the application on March 15, 2005. (PCR App. pp. 1098-1102). Tara Dawn Shurling, Esq., represented Petitioner in the action. On or about November 16, 2006, PCR counsel filed an amendment to the PCR application and raised the following additional issue:

> Trial counsel provided the Applicant with ineffective assistance of counsel and thereby violated her rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 14 of the South Carolina Constitution by neglecting to raise a proper objection to the introduction of testimony and evidence which improperly commented on the Applicant's exercise of her constitutional right to remain silent.

(PCR App. p. 1104).

On December 4, 2006, PCR counsel filed a second amendment and raised the following additional claim:

> Appellate counsel was ineffective for neglecting to raise and present meritorious issues for review by a higher court.

(PCR App. p. 1106).

An evidentiary hearing was held December 6, 2006, before the Honorable L. Casey Manning. Judge Manning issued a written Order of Dismissal on October 23, 2007, filed November 29, 2007.

(PCR App. pp. 1156-1166). Petitioner filed a motion to alter or amend on December 17, 2007. Respondent made its return to the motion on December 28, 2007. (PCR App. pp. 1175-1178). On June 2, 2008, Judge Manning denied the motion to alter or amend. (PCR App. p. 1181). Petitioner appealed the denial of relief.

Counsel for Petitioner, Ms. Schurling, filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina on January 21, 2009, and raised the following issues:

> I. Whether trial counsel was ineffective in failing to argue that the State's witnesses repeatedly and improperly commented on the Petitioner's lack of remorse?
>
> II. Whether trial counsel was ineffective for failing to argue that the State's witnesses were improperly commenting on the Petitioner's right to remain silent?
>
> III. Whether appellate counsel was ineffective for failing to argue on appeal that the prior bad act testimony presented by the State was not proven by clear and convincing evidence?
>
> IV. Whether appellate counsel was ineffective for failing to argue on appeal that the prior bad act testimony presented by the State was erroneously admitted pursuant to Rule 404(b), SCRE?

(Cert. Pet. p. 2).

The state made its return to the petition on April 8, 2009. Petitioner filed a reply to the return on April 22, 2009. The Supreme Court of South Carolina denied the petition on June 25, 2010. Petitioner filed a petition for rehearing on July 8, 2010, which was denied on July 22, 2010. The supreme court issued the remittitur on July 22, 2010.

## II.  GROUNDS FOR RELIEF

In her *pro se* Petition for Writ of Habeas Corpus, Petitioner raises the following grounds for relief, quoted verbatim in part:

| | |
|---|---|
| GROUND ONE: | Ineffective Assistance of Counsel; |
| SUPPORTING FACTS: | Ineffective assistance of counsel-my attorney didn't present an effective case, do any investigation of facts and allowed in erroneous information and testimony. The attorney never questioned testimony of State's witnesses in an adversarial manner, (2) co-defendant's trial was overturned due to errors brought up in Appeals the same errors were made in my trial, my [conviction] should have been overturned. |
| GROUND TWO: | Government failed to meet its burden of proof; |
| GROUND THREE: | Brady violation to Disclose Total Medical Information; |
| GROUND FOUR: | Improper questioning by the Prosecutor. |

(Petition).

### III. DISCUSSION AS TO STATUTE OF LIMITATIONS

The Respondent asserts that the Petitioner's claims must be dismissed as untimely. Specifically, Respondent asserts that the Petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to

establish a one-year statute of limitations for filing habeas petitions.[2] Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the <u>latest</u> of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, Petitioner was convicted in February 15, 2002, and filed and served a timely Notice of Appeal. The South Carolina Court of Appeals affirmed the conviction and

---

[2] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. <u>Duarte v. Hershberger</u>, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

dismissed her appeal. Petitioner did not file for a rehearing or a writ of certiorari to seek review by the South Carolina Supreme Court. The Remittitur was issued on July 8, 2004. Therefore, Petitioner's state court conviction was finalized by the conclusion of direct review on July 8, 2004, the date the South Carolina Court of Appeals issued the Remittitur.[3] See *Wise v. S.C. Dep't of Corrections*, 642 S.E.2d 551 (S.C. 2007). The one-year limitations period began running on this date, and Petitioner had until July 8, 2005, to file her federal habeas corpus action unless the period was at any time tolled. See, e.g., Brown v. Angelone, 150 F.3d 370 (4th Cir. 1998).

      Petitioner filed a PCR application on December 13, 2004. Therefore, one hundred fifty-eight (158) days lapsed between the date the conviction became final and the time the PCR was filed. The period of limitations for filing her federal habeas corpus action was tolled during the pendency of the PCR. A evidentiary hearing was held on December 6, 2006, and an Order of Dismissal was filed on November 29, 2007, dismissing the PCR application. Petitioner filed a motion to alter or amend which was denied. Petitioner appealed the PCR court's ruling by filing a petition for Writ of Certiorari in the Supreme Court of South Carolina on January 21, 2009. The South Carolina Supreme Court denied the petition and petition for rehearing and issued the Remittitur on July 22, 2010. Petitioner filed this habeas petition on February 28, 2011. The date of filing is the date Petitioner gave her petition to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988). However, the envelope does not contain a date stamp from the prison and the Petitioner failed to execute a declaration of when the petition was placed in the prison mail room for filing. (Petition, doc. #1). Recently, Judge Cameron McGowan Currie, United States District Court Judge, addressed

---

[3] The Petitioner is not entitled to toll the ninety (90) days to seek certiorari review from the United States Supreme Court since he did not seek review from the South Carolina Supreme Court. See Reddock v. Ozmit, 2010 WL 568870 at 3-6 (D.S.C. Feb. 11, 2010).

7

a situation where there was no stamp from the prison mailroom and found as follows:

> Absent specific indication by prison authorities as to the date received for mailing, courts look to the date the petition is executed by the inmate (in this case, May 31, 2010), or the postmark date (June 22, 2010). *Houston*, 487 U.S. at 275 (emphasizing importance of objective indicia of delivery to alleviate need to "dispute a prisoner's assertions that he delivered the paper on a different date."); *See*, *e.g.*, *Marsh v. Soares*, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000) ("Liberal application of the mailbox rule . . . causes us to treat the petition as placed in the hands of prison authorities on the same day it was signed.") *and Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (considering postmark as evidence of date of mailing in applying prison mailbox rule). Therefore, the objective indicia of the postmark date (June 22, 2011) and the petition's receipt by the Clerk (June 24, 2011) lead this court to find that the Petition was filed on June 22, 2011.

 Byrd v. Riviera, C.A. No.: 4:10-1632-CMC-TER.-

Similarly, in this case, absent specific indication by prison authorities as to the date received for mailing and absent the date the petition was executed by the inmate, the court looks to objective indicia to determine the "date of filing." The envelope contains a postmark date of February 17, 2011, and there is a Clerk's receipt of February 22, 2011. The Petitioner's signature was notarized on February 10, 2011. However, Respondent supplemented the return submitting an affidavit from Jean Tinsley of the Leath Correctional Institutional mail room. (Doc. #35). Tinsley attests that Petitioner visited the mail room on February 17, 2011, and mailed a document with postage of $1.90. (Id.). The Petitioner's envelope on file with the court bears a postmark of February 17, 2011, and reflects postage in the amount of $1.90. (Id.). Petitioner did not address this issue in his sur reply of September 12, 2011. Based on the evidence before presented, Petitioner fails to show an issue of fact, and the petition was filed on February 17, 2011, the date of the postmark.

Using the date of February 17, 2011, another two hundred ten (210) days of non-tolled time

expired. Consequently, there were at least three hundred sixty-eight (368) days of non-tolled time since the Petitioner's one-year limitations period began to run. Hence, the instant petition is time barred and should be dismissed.

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d). In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d) commenced on April 24, 1996. Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period. This petition remained "pending" in state courts until January 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

Harris, 209 F.3d at 327.

In her response in opposition to the motion for summary judgment, Petitioner did not address Respondent's argument with regard to the statute of limitations. The undersigned concludes there is no evidence that warrants equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>
>> [A]ny invocation of equity to relieve the strict

> application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
> Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Based on the above reasons, the undersigned finds that the petition is barred by the statute of limitations, and Respondent's motion for summary judgment should be granted. In the alternative, the undersigned will briefly address the Respondent's motion for summary judgment in relation to the issues raised in the petition.

## IV.  SUMMARY JUDGMENT

As stated above, the Respondent filed a return and memorandum of law in support of the motion for summary judgment. Petitioner filed a response in opposition.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the

11

non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## V. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case.

Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)).  However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id.   "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).  Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## VI.  PROCEDURAL BAR

A.  Exhaustion and Procedural Bypass

The doctrines of exhaustion and procedural bypass can bar a federal habeas claim if a petitioner has not first submitted his claims for relief to the state courts.  Generally, pursuant to the exhaustion doctrine[4], a habeas petitioner will be procedurally barred from bringing a federal habeas claim if the claim has not first been presented to the state's highest court with authority to decide the issue.  See 28 U.S.C. §2254[5]; Rose v. Lundy, 455 U.S. 509, 515 (1982).

---

[4]  As stated by the Supreme Court:
> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

[5]  §2254(b) and (c) read as follows:
(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

13

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCAR 207; Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.

When the petition for habeas relief is filed in the federal court, a Petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must

---

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B)(I) there is either an absence of available State corrective process; or

    (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

 (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

 (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

 (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

present the issue to the state court before requesting a writ of habeas corpus in the federal courts. See Rose, 455 U.S. at 515; Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983); Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977).

If a petitioner fails to raise a claim at the appropriate time in state court and state procedural rules bar further means of presenting the issue to the state courts, the claim is procedurally bypassed and, generally, is procedurally barred from federal habeas review. Smith v. Murray, 477 U.S. 527, 533 (1986).

Federal courts have jurisdiction to consider habeas claims subject to procedural bar (through exhaustion or procedural bypass); however,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. at 84 (1977)). See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

B.  Cause and Actual Prejudice

In order to have such claims considered, a Petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A Petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

If a petitioner fails to show "cause," the court is not required to consider "actual prejudice."

15

Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a Petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the Petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VII. ANALYSIS

Respondent contends that all the claims raised by Petitioner are procedurally barred. Respondent argues that "none of the grounds raised here were raised to and ruled upon by the PCR judge, or where the allegation may be construed as a direct appeal issue, not raised in the direct appeal."(Respondent's Memorandum, p.13). Further, Respondent asserts that the Petitioner admits to default in Grounds Two, Three and Four but claims proper exhaustion in Ground One.

GROUND ONE

In Ground One, Petitioner argues ineffective assistance of counsel asserting counsel did not present an effective case, did not do any investigation of facts and, allowed erroneous information and testimony, and never questioned the testimony of the State's witnesses in an adversarial manner.

Petitioner also asserts that the same errors were made in her trial that were made in the co-defendant's trial which was overturned on appeal. (Petition). A review of the PCR application and PCR court's Order of Dismissal reveal the issues presented in Ground One were not raised in PCR application and/or ruled upon by the PCR Court in its Order of Dismissal filed November 29, 2007, and not raised in Petitioner's PCR appeal. Also, Petitioner failed to request a ruling pursuant to Rule 59(e), SCRCP, with respect to this issue. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (S.C.2007).[6] Therefore, this claim is procedurally barred from review in federal habeas corpus. Coleman, 501 U.S. 722 (holding issue not properly raised to state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas). Petitioner has not demonstrated cause and prejudice for his procedural default of this claim. Accordingly, it is recommended that Ground One be dismissed as procedurally barred.

GROUNDS TWO, THREE, AND FOUR

Respondents assert Grounds Two, Three, and Four are procedurally barred from habeas review as they were either not raised on direct appeal or not raised in the PCR application and ruled

---

[6] In Bostic v. Stevenson, 589 F.3d 160, 162–65 (4th Cir.2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in Marlar, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e). Therefore, for matters in which the PCR court ruled prior to Marlar (i.e., November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar. See Mendenhall v. Cohen 2011 WL 1119178 (D.S.C. 2011).

upon by the PCR court. Respondent argues these issues should be dismissed due to procedural default.

In her petition, Petitioner admits Grounds Two, Three, and Four were not raised in state court stating that her attorneys refused to raise them. However, this does not present cause for the default. The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, 477 U.S. at 490-92.

Thus, a petitioner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. Id. at 489-97.[7] The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim, before it can be used to establish cause for a procedural default. Id. at 489. The doctrine's purposes would be frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it. Id.

Grounds Two, Three and Four have been procedurally defaulted. Petitioner has failed to make the

---

[7] It is noted in the PCR Court's Order of Dismissal, Petitioner raised the issue that appellate counsel was ineffective for neglecting to raise and present two issues that were properly preserved for review but not briefed on appeal. The first issue involved counsel's motion for a severance of the trials between her and her co-defendant, both of which were charged with homicide by child-abuse. The second issue, raised at and ruled upon by the PCR court, was that "the appellate lawyer should have briefed the admissibility of a prior incident found in the trial transcript on page 245. The incident was relevant to establish a pattern of abuse to the child." (PCR Order of Dismissal, Tr. 1159-1160). Petitioner did not raise issues of ineffective assistance of counsel at PCR with regard to the issues raised in her habeas petition.

requisite showing to overcome this default, <u>Coleman v. Thompson</u>, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray v. Carrier</u>, <u>supra</u>.  Therefore, the undersigned recommends that Grounds Two, Three, and Four in the habeas petition be dismissed as procedurally barred and Respondent's motion for summary judgment granted on these issues.

## VIII.  CONCLUSION

As set out above, the Petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. In the alternative, it is

RECOMMENDED that Respondent's motion for summary judgment (docket entry #26) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus be denied, and the petition dismissed without an evidentiary hearing.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 19, 2011
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**